UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN RAY MCPHERSON,

                Plaintiff,               Case No. 2:18-cv-11160
                                             District Judge Terrence G. Berg
v.                                 Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 10), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 13) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 13),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Alan Ray McPherson, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 10), the
Commissioner's cross-motion for summary judgment (DE 13), and the
administrative record (DE 8).

### A.    Background and Administrative History

#### 1.    Plaintiff's initial applications

On January 3, 2012, Plaintiff filed applications for DI and supplemental
security income (SSI) benefits, in which he alleged an onset date of November 14,
2010.  (R. at 57.)  On August 1, 2013, ALJ Regina L. Sleater determined that
Plaintiff had not been under a disability, as defined in the Social Security Act, from
November 14, 2010, through the date of the decision.  (R. at 54-67.)  Of particular
import to the matter currently before the Court is ALJ Sleater's finding that
Plaintiff had the residual functional capacity ("RFC"):

> . . . to perform light work [*i.e.*, *exertional limitations*]. . . with frequent
> postural activities.  He may not climb ladders/ropes/scaffolds [*i.e.*,
> *postural limitations*].  He may frequently perform handling and
> fingering tasks and occasionally reach overhead.  He may frequently,
> but not constantly, perform neck movements [*i.e.*, *manipulative
> limitations*].

(R. at 60-63.)[1]  On October 31, 2014, the Appeals Council denied Plaintiff's
request for review.  (R. at 68-74.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

### 2.    Plaintiff's subsequent application

In his subsequent application, Plaintiff alleges his disability began on August 2, 2013, at the age of 50.  (R. at 156-159.)  His January 2015 disability report lists several conditions (chronic neck, back and joint pain, anxiety, neuropathy, and depression) as limiting his ability to work.  (R. at 179.)  The application was denied on April 23, 2015.  (R. at 75-85, 88-97.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 98-99.)  On March 23, 2017, ALJ Andrew Sloss held a hearing, at which Plaintiff and a vocational expert (VE), Stephanie Lorey, testified.  (R. at 35-53.)  On May 30, 2017, ALJ Sloss issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-27.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 154-155.)  It seems that he also submitted medical records dated April 26, 2017. (DE 28-31.)  However, on February 12, 2018, the Appeals Council denied Plaintiff's request for review, noting, *inter alia*, that the "additional evidence does not relate to the period at issue."  (R. at 1-6.)  Thus, ALJ Sloss's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 11, 2018.

### B.    Plaintiff's Medical History

---

The administrative record contains approximately 205 pages of medical records, which were available to the ALJ at the time of his May 30, 2017 decision. (R. at 24-27, 242-446 [Exhibits 1F-8F].)  Also, as noted above, Plaintiff submitted 4 pages of medical records, which are dated April 26, 2017.  (DE 28-31.)

It appears that only 27 pages of the medical evidence of record (MER) fall within the relevant period, *i.e.*, the August 2, 2013 alleged onset date and the December 31, 2014 DLI:  **(1)** Katie Mysen, N.P.'s records, lab results and Plaintiff's adult patient history, each dated July 10, 2014, as well as a July 14, 2014 message to call Plaintiff with test results (R. at 254-255, 258-262, 270-274); **(2)** Mysen's July 24, 2014 notes (R. at 251-253); **(3)** Mysen's August 11, 2014 notes (R. at 248-250); **(4)** August 12, 2014 hepatic function panel lab results and an August 15, 2014 message to call Plaintiff with test results (R. at 256-257, 268-269); **(5)** Brian Glenn, M.D.'s October 2, 2014 notes (R. at 245-247); and **(6)** the December 30, 2014 computed tomography of the thorax (R. at 263-264).[2]  These materials will be discussed in detail, as necessary, below.

## C.    The Administrative Decision

---

[2] Although the MER includes records dated January 2015, *i.e.*, the month following Plaintiff's December 31, 2014 DLI (*see* R. at 242-244, 265-267, 275-276), ALJ Sloss appears to have been largely accurate in his observation that "[w]ith the exception of the evidence contained in Exhibit B1F, the remainder of the medical evidence is well after the date last insured, and not relevant for this disability analysis."  (R. at 20 (citing R. at 283-446 [B2F-B8F]); *see also* R. at 277.)

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of August 2, 2013 through his date last insured (DLI) of December 31, 2014.  (R. at 17.)  At **Step 2**, the ALJ found that, through the DLI, Plaintiff had the following severe impairments: osteoarthritis and degenerative disc disease (DDD).  (*Id*. at 17-18.)  At **Step 3**, the ALJ found that, through the DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 18.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's RFC and determined that, through the DLI, Plaintiff had the RFC:

> . . . to perform light work [*i.e.*, *exertional limitations*] . . . except he is limited to occasional overhead reaching and frequent handling and fingering bilaterally [*i.e.*, *manipulative limitations*].

(*Id*. at 18-21.)  At **Step 4**, the ALJ determined that, though the DLI, Plaintiff was unable to perform any past relevant work.  (*Id*. at 21-22.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, through the DLI, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as marker, router, and cashier.  (*Id*. at 22-23.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, at any time from August 2, 2013, the alleged onset date, through December 31, 2014, the DLI.  (*Id.* at 23.)

### D.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.   **Analysis**

In his July 31, 2018 motion for summary judgment, Plaintiff contends that the ALJ: **(1)** improperly relied upon *Drummond*; **(2)** erred in his consideration of new and additional evidence or changed circumstances; and, **(3)** was not properly appointed, in light of the Supreme Court's recent opinion in *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (June 21, 2018). (DE 10 at 6-11.) The Commissioner contends that substantial evidence supports the ALJ's decision. (DE 13 at 5-28.)

7

1.   *Drummond* **and** *Earley*

The Sixth Circuit has directed that, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (emphasis added).  Following *Drummond*, the Commissioner issued AR 98-4(6), which provides, in part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998) (emphases added).

Accordingly, this Court has observed that, "[w]hen considering a renewed application for benefits, SSAR 98-4(6) and *Drummond* create a presumption that facts found in a prior ruling remain true in a subsequent unadjudicated period unless 'there is new and material evidence' showing changed circumstances occurring after the prior decision."  *McAllister v. Comm'r of Soc. Sec.*, No. CV 15-13605, 2016 WL 11258182, at *17 (E.D. Mich. Sept. 26, 2016) (Morris, M.J.), *report and recommendation adopted as modified sub nom. McAllister v. Colvin*, No. 15-13605, 2017 WL 1190952 (E.D. Mich. Mar. 31, 2017) (Berg, J.).

It is clear that *Drummond* and/or AR 98-4(6) played a part in the ALJ decision at issue in the instant appeal, as they are both mentioned in Plaintiff's 2015 disability determination explanation. (R. at 84.) Moreover, after citing AR 98-4(6) and *Drummond*, ALJ Sloss's May 30, 2017 decision notes:

> In this instance, the record does not document a significant change in the claimant's medical status since the prior decision. The prior [ALJ]'s [RFC] is essentially reproduced above. However, all of the new evidence has been considered in evaluating the claimant's [RFC] since the alleged onset date.

(R. at 19.)[3]

However, more recently, the Sixth Circuit issued a published decision that clarifies *Drummond*'s reach, with only a passing reference to AR 98-4(6)'s "new and material evidence" requirement. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018). In *Earley*, the Sixth Circuit stated:

> "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). Just so here. Had Earley filed a second application for disability benefits for June 25, 2010 to May 15, 2012, the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds and the principles of finality that it supports. But Earley did not do that. She filed a new application for a new period of time. When an individual seeks disability benefits for a

---

[3] In the *procedural history* portion of his brief, Plaintiff notes that "[t]he ALJ actually *omitted* some restrictions, thus finding McPherson to have improved from the first claim to the second." (DE 10 at 4 (emphasis added) (referencing R. at 18, 60).) However, the ALJ expressly stated that the record did not document a significant change. (R. at 19.) Moreover, the Court does not construe this passing, introductory comment as meriting analysis of any omissions in the later RFC.

distinct period of time, each application is entitled to review.  There is
nothing in the relevant statutes to the contrary.  And res judicata only
"foreclose[s] successive litigation of the very same claim."  *New
Hampshire v. Maine*, 532 U.S. 742, 748 . . . (2001).

*Earley*, 893 F.3d at 933.

Plaintiff McPherson argues that *Drummond* does not apply in the instant
case, because, whereas his initial application concerned the period of November
14, 2010 through August 1, 2013, his subsequent application "was for a different
time period[,]" *i.e.*, August 2, 2013 through December 31, 2014.  (DE 10 at 7; R. at
57, 64, 156, 23.)  The Undersigned agrees.  Nonetheless, the Court must consider
whether ALJ Sloss's alleged consideration of "all of the new evidence" was
adequate, particularly with respect to the new time period covered by the instant
application.  (*See* DE 13 at 7, R. at 18-21.)  For the reasons that are illustrated
below, I find that it was.

### 2.    "New and material evidence" or "changed circumstances"

Plaintiff seems to contest:  **(a)** the ALJ's statement that "the record does not
document a significant change in the claimant's medical status since the prior
decision[;]" and, **(b)** the adequacy of ALJ Sloss's consideration of the new
evidence.  (R. at 19, DE 10 at 7-8.)  As Plaintiff puts it, the ALJ's "reproduction of
the prior findings[,]" coupled with "cursory analysis," reveals that he "did not
newly or fully evaluate the claim."  (DE 10 at 7.)  Specifically, he alleges that his
mental impairments, chronic obstructive pulmonary disorder (COPD), and

rheumatoid arthritis (RA) were either distinguishing factors, "new and additional," or a "changed circumstance" from his initial claim.  (DE 10 at 8-10.)

### a.     Mental

Plaintiff's January 2015 disability report listed *anxiety* and *depression* among the conditions that limit his ability to work.  (R. at 179.)  However, Plaintiff's July 2018 mental impairments statement of error is based upon the ALJ's treatment of Plaintiff's *substance abuse* and perhaps also his *anxiety*.  (DE 10 at 8-9.)

As for the claim of anxiety, Plaintiff refers to a January 17, 2017 record from Brian Glenn, M.D., who saw Plaintiff "for follow-up of anxiety."  (DE 10 at 8, R. at 361-364.)  However, this record did not occur during the August 2, 2013 to December 31, 2014 relevant period.  Moreover, with reference to the August 11, 2014 records of Katie Mysen, N.P., which *are* from the relevant period, the Commissioner notes that, "[d]uring the relevant period, Plaintiff denied anxiety and depression."  (DE 13 at 7, 9.)  More specifically, Ms. Mysen's notation states: "Associated symptoms include no recent drinking, no alcohol related arrest, no recent family difficulties, no recent social difficulties, no job difficulties, *no anxiety*, no blackouts, *no depression*, no memory problems, no nausea and no vomiting."  (R. at 248 (emphases added).)  The same record also states: "IS DOING WELL ON LIBRIUM, NOT DRINKING."  (*Id.*)

Plaintiff claims that his substance abuse had an effect "on his ability to mentally perform work activities, his ability to properly comply with his treatment, and to stay sober . . .[,]" and, therefore, "required evaluation."  (DE 10 ta 8.)  In fact, on May 30, 2017, ALJ Sloss found that Plaintiff's alcohol dependency was a "non-severe" impairment, in support of which he provided a general citation to two exhibits, *i.e.*, 45 pages of medical records.  (R. at 18, 242-286.)  Moreover, within his RFC discussion, the ALJ:  **(i)** noted that, on April 6, 2015, state agency consultant Rom Kriauciunas, Ph.D. opined that Plaintiff's alcohol, substance addiction disorders were non severe; and, **(ii)** with reference to records dated July 10, 2014 to January 16, 2015, summarized that "after being prescribed Librium [*i.e.*, chlordiazepoxide], the claimant reported sobriety from alcohol through the [DLI][,]" *i.e.*, December 31, 2014.  (R. at 20-21; *see also* R. at 79, 242-282.)  The relevant records from McLaren Community Medical Center support this statement, as:  **(i)** Plaintiff allegedly began taking Librium in early July 2014; **(ii)** on July 10, 2014, he reported that it was "working well[;]" **(iii)** on July 24, 2014, he reported having been "sober for 21 days" and was "doing great[;]" and, **(iv)** on August 11, 2014, although he presented with "complaints of alcohol abuse[,]" as quoted above, he reported that he was "doing well on Librium, not drinking."  (R. at 254, 251, 248.)

Additionally, Plaintiff argues that the ALJ's failure to consider the "four broad functional areas," *i.e.*, "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself[,]" 20 C.F.R. § 404.1520a(c)(3), was harmful.  (DE 10 at 8.)  While the Commissioner agrees that "the ALJ's narrative is procedurally deficient," she contends the error was harmless.   (DE 13 at 11.)  On this issue, the Undersigned agrees with the Commissioner.  Preliminarily, in explaining his determination that Plaintiff's alcohol dependency was non-severe at Step 2, the ALJ noted that it was no more than a slight abnormality and did not "have more than a minimal effect on [Plaintiff's] ability to do basic work activities."  (R. at 18.)  More to the point, even if the ALJ did not expressly rate the degree of functional limitation in each of the functional areas set forth in 20 C.F.R. § 404.1520a(c)(3), the ALJ cured this omission in the RFC discussion, as set forth in more detail above.  (R. at 20-21 (citing R. at 79, 242-282).)  The Commissioner also points out that, while "[t]he record contains evidence that Plaintiff abused alcohol during the relevant period, [it] also shows that he stopped drinking in July 2014 – less than 12 months after the date he alleges he became disabled – and remained sober through and beyond his date last insured[,]" in support of which she provides multiple record citations. (DE 13 at 8-9 (internal footnotes omitted) (citing R. at 242, 248, 251, 254, 258, 284, 288, 346, 349, 352 & 359).)  Even if the July 14, 2014 record reflects that

"one of the tests for his liver function was high, likely from drinking[,]" the August 15, 2014 record reflects that Plaintiff's "liver enzymes are getting better[,]" and Plaintiff has not refuted the Commissioner's statement by way of a reply brief.  (R. at 258, 256.)  Nor has Plaintiff cited contrary evidence from the relevant time period within the mental impairments portion of his initial argument.  (DE 10 at 8-9.)[4]

In sum, Plaintiff has not shown that the ALJ's consideration of Plaintiff's alleged substance abuse and/or anxiety was improper.  Therefore, he has not satisfied his burden to overturn the absence of mental health limitations in the RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

## b.   COPD

COPD was not among the conditions Plaintiff listed in January 2015 as limiting his ability to work.  (R. at 179.)  Still, the April 2015 disability

---

[4] Within his mental impairments argument, Plaintiff refers to the ALJ's finding regarding "the limiting effects of his pain[.]"  (DE 10 at 9.)  Assuming Plaintiff is referring to the ALJ's finding regarding "the intensity, persistence and limiting effects" of Plaintiff's symptoms (R. at 20), Plaintiff has not presented a developed challenge to the ALJ's credibility determination.  20 C.F.R. §§ 404.1529, 416.929.  Moreover, Plaintiff's introductory citation to "treatment with pain management for his cervical and lumbar spine pain and neurology[,]" is supported by references to records from February 2015 and February 2017, each of which post-dates his December 31, 2014 DLI.  (DE 10 at 5; R. at 287, 356.)

determination explanation (DDE), for which Rom Kriauciunas, Ph.D. and Quan

Nguyen, M.D. were the state agency consultants, noted that Plaintiff's COPD was

severe.  (R. at 79.)  At the same time, it explained:

> There is new material after [the] ALJ's decision on [August 1, 2013],
> which is 'interstitial lung disease'.  The claimant was evaluated by
> pulmonologist on [February 5, 2015], who suggested/planned doing a
> PFT [pulmonary function test].  The claimant did call and stated the
> test was not done.  The explanation was that he had to quit smoking
> before proceeding for PFT, and he does not want to do that.  With the
> expired DLI as of [December 31, 2014], no further development is
> warranted.
>
> Based on available MER, even with new material, previous light RFC
> is adopted.

(R. at 82; *see also* R. at 79, 283-285 [B2F].)  During the March 23, 2017 hearing,

Plaintiff testified that he uses "inhalers and stuff . . . once in a while[.]"  (R. at 41.)

In his May 2017 decision, the ALJ:  **(i)** found that Plaintiff's COPD was

non-severe, in support of which he provided a general citation to two exhibits, *i.e.*,

45 pages of medical records (R. at 242-286); **(ii)** found that "[t]he severity of the

claimant's COPD did not meet the requirements of listing 3.02 or any other

relevant listing section[;]" and, **(iii)** within the RFC determination, acknowledged

both the DDE's conclusion that the COPD was severe and the above-described

RFC explanation (*see* R. at 79, 82).  (R. at 18, 20-21.)  Therefore, the Undersigned

disagrees that the ALJ "relied on *Drummond* to create [Plaintiff's] RFC rather than

fully evaluating" the effects of Plaintiff's COPD.  (DE 10 at 9.)

Although Plaintiff's argument on this issue <u>does not expressly cite any medical record from the relevant period</u>, the "objective imaging" to which he refers is likely the relevant December 30, 2014 computed tomography of the thorax (R. at 263-264). (*See* DE 10 at 9.)[5] The tomography revealed both "[f]indings *suspicious* for chronic interstitial lung disease such as chronic bronchitis or diffuse interstitial pneumonitis given patient's smoking history[,]" and "*[m]ild* scattered [DDD] of the thoracic and lumbar spines[,]" although the ALJ's express reference to this record was only for the DDD finding. (R. at 20, R. at 263 (emphases added).) Nonetheless, Plaintiff's July, August and October 2014 pulmonary examinations were normal. (R. at 246, 249, 252, 255.) And, albeit briefly post-dating the tomography and the December 31, 2014 DLI, Dr. Glenn's January 9, 2015 notes also reflect a normal pulmonary examination. (R. at 243.)

In sum, Plaintiff's citation to one relatively benign or, at best, ambiguous objective pulmonary finding within the relevant period does not meet his burden to overturn the ALJ's physical RFC, which consists of exertional and manipulative limitations. *Walters,* 127 F.3d at 529.

### c.     Rheumatoid Arthritis (RA)

---

[5] Although Plaintiff refers to "objective examinations" within his "medical and vocational history," his supporting citations are either to: **(a)** records outside of the relevant period (R. at 287, 317, 445); or, **(b)** Nurse Practitioner Mysen's August 11, 2014 notes (R. at 248). (DE 10 at 5.)

On August 1, 2013, in association with Plaintiff's *first claim*, ALJ Sleater noted that "the records do not support a diagnosis of rheumatoid arthritis except through the claimant's subject[ive] reports.  He has never consulted with a rheumatologist or ever been provided with a diagnosis by any treating physician." (R. at 62.)  Moreover, ALJ Sleater noted that Plaintiff's "other allegations of rheumatoid arthritis or a possible immune condition are simply not supported by the record and therefore not incorporated into the residual functional capacity determination."  (*Id.*)

The MER associated with Plaintiff's *second claim* shows that Nurse Practitioner Mysen and/or Dr. Glenn diagnosed and/or treated Plaintiff for osteoarthrosis in July, August, and October 2014.  (R. 246, 250, 253, 255.)  In his January 2015 disability report, Plaintiff claimed that chronic pain and neuropathy were among the conditions that limited his ability to work.  (R. at 179.)  On March 23, 2017, Plaintiff testified:

> I've had the arthritis issues for a few years, but in the last year and a half, two years it's just gotten severely worse.  And the nerve damage around the plate.  I do have severe carpal tunnel in both wrists, too that they want to operate on.  But, everything's just, the arthritis is just basically taken over my knees, my elbows, I can't sleep.  It's just tingling and numbness . . . .

(R. at 40.)  Upon examination by his counsel, Plaintiff testified about problems with his hands and reaching and also testified that his neck pain has "gotten a lot worse[,] [b]ecause the arthritis took over."  (R. at 43.)

Then, in May 2017, at Step 2 and with a general citation to 45 pages of medical records, the ALJ found that Plaintiff's severe impairments included osteoarthritis and DDD. (R. at 17-18, 242-286.) At Step 3, the ALJ found that Plaintiff's physical impairments "did not meet or medical equal the criteria of any impairment listed in 1.02 ["Major dysfunction of a joint(s) (due to any cause)"] [or] 1.04 ["Disorders of the spine"][.]" (R. at 18.) Then, within the RFC discussion, the ALJ expressly cited several pre-DLI records, which were dated from July 10, 2014 to December 30, 2014. (R. at 20, 245-250, 254-255, 261-263.) Ultimately, the ALJ explained:

> The undersigned has taken into account the claimant's alleged orthopedic impairments in determining a light exertional level. As the claimant testified, his arthritis did not become more severe until approximately two years ago, after the date last insured. During the relevant time period, the claimant sought conservative treatment for occasional arthritic pain. The claimant's complaints of neck pain, arthritic pain, and the objective findings in the record ([R. at 246, 263]), were considered in determining restrictions in the [RFC] of occasional overhead reaching and frequent handling and fingering bilaterally.

(R. at 21.)

In the RA portion of her brief, Plaintiff does not successfully challenge these findings. (DE 10 at 9-10.) When arguing that the ALJ "should have fully evaluated" his RA "instead of relying on *Drummond*[,]" Plaintiff points to records from Michigan Rheumatology, each of which is dated from November 25, 2015 to April 27, 2016. (DE 10 at 9-10, R. at 337-352.); however, all of these records

post-date the December 31, 2014 DLI.  As such, Plaintiff has not met his burden to overturn the ALJ's physical RFC, which consists of exertional and manipulative limitations.  *Walters,* 127 F.3d at 529.  Plaintiff fails to show any objective evidence relating to the relevant period that requires more restrictive limitations than those assessed by the ALJ on May 30, 2017.  Furthermore, as noted above, the ALJ's RFC discussion clearly focused on evidence within the relevant time period and can hardly be accused of using *Drummond* to rubberstamp the prior ALJ's August 1, 2013 findings.

### 3.    The Appointments Clause

Based on the Supreme Court's relatively recent holding that Securities and Exchange Commission ALJs qualify as "Officers" under the Appointments Clause of the U.S. Constitution, *see Lucia*, 138 S. Ct. at 2049, Plaintiff argues that the Social Security Administration ALJ's "denial was unconstitutional because [he] was not properly appointed as an 'office[r] of the United States.'"  (DE 10 at 10-11.)

The President of the United States "shall have Power, . . . by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the

Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred."  *Ryder v. United States*, 515 U.S. 177, 182–183 (1995).  According to Plaintiff, he "makes a timely challenge to the constitutional validity of the appointment of the [ALJ] below."  (DE 10 at 10.)  However, without further guidance from Plaintiff, the Court can only assume that his objection was first asserted in the instant, July 31, 2018 motion.[6]  In other words, the Court assumes, as the Commissioner argues, that Plaintiff did not present his Appointments Clause claim to the Social Security Administration during the administrative process.  (*See* DE 13 at 18-28.)  Plaintiff did not challenge this statement by filing a reply.  A brief review of the hearing transcript seems to confirm that no such challenge was made; in fact, when specifically asked by the ALJ at the beginning of the hearing if counsel had any "objection to me considering those records in this case[,]"

---

[6] The Court's own review reveals that Plaintiff's counsel's August 2, 2017 letter to the Appeals Council only addresses the ALJ's treatment of neck rotation, pulmonary issues, and osteoarthritis, as well as numbness and tingling.  (R. at 240-241.)

presumably Exhibits B1A through B8F (R. at 54-446), the response was, "No,

Your Honor."  (R. at 37.)  If there were any objection to the ALJ's authority to

hear the case, one would have expected it to be voiced at that juncture.  It was also

not voiced at the end of the hearing, another logical juncture.  (R. at 52-53.)  Thus,

"[b]ecause the plaintiff did not raise his Appointments Clause challenge until he

sought judicial review, . . . he has forfeited the issue." *Fortin v. Comm'r of Soc.

Sec.*, 372 F. Supp. 3d 558, 568 (E.D. Mich. Mar. 29, 2019) (Lawson, J.).[7]

### F.    Conclusion

Plaintiff has the burden of proof on his statements of error.  *Walters*, 127

F.3d at 529.  Plaintiff has not shown legal error that would upend the ALJ's

decision.  It is clear to the Undersigned that the ALJ heeded the Sixth Circuit's

admonition that "[w]hen an individual seeks disability benefits for a distinct period

of time, each application is entitled to review." *Earley*, 893 F.3d at 933.  Plaintiff

was given a more than adequate review for the distinct period of time at issue here

---

[7] *See also Shoops v. Comm'r of Soc. Sec.*, No. 18-CV-10444, 2019 WL 2051902, at
*17 (E.D. Mich. Feb. 14, 2019) (Majzoub, M.J.) ("Plaintiff's Appointments Clause
challenge should be deemed forfeited as untimely."), *report and recommendation
adopted as modified*, No. 18-10444, 2019 WL 1417164 (E.D. Mich. Mar. 29,
2019) (Edmunds, J.); *Ramsey v. Berryhill*, No. 17-13713, 2019 WL 1397241, at *3
(E.D. Mich. Mar. 28, 2019) (Edmunds, J.) ("Plaintiff forfeited and waived her
Appointments Clause challenge because she failed to present it at the
administrative level."); *Hutchins v. Berryhill*, 376 F. Supp. 3d 775 (E.D. Mich.
Mar. 26, 2019) (Cleland, J.) ("the court joins the majority of district courts to
address this issue and concludes that Plaintiff forfeited his Appointments Clause
argument.").

(August 2, 2013 to December 31, 2014), and the ALJ carefully considered the "new and material evidence" or "changed circumstances" for the relevant period. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 13) and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.  [

Dated:  July 8, 2019                          s/*Anthony P. Patti*
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE